IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| GLENN WINNINGHAM, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:24-cv-0881-O-BP |
| | § | |
| KATHRYN PHILLIPS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are Motions to Dismiss filed by the Texas Department of Public Safety ("DPS") and Steven McCraw and Appendix in support on October 9, 2024 (ECF Nos. 18, 19); the response filed by Glenn Winningham ("Winningham") on November 19, 2024 (ECF No. 24); Motion to Dismiss filed by Bill Pinkham, D'Layne Carter, G.A. Fidelie, Jr., Jeanmarie Baer, Justin Brom, Mollie Lerew, Blake Newton, Perdue Brandon Fielder Collins & Mott, LLP, Montague County, Kathy Phillips, Kim Jones, Jennifer Fenoglio, Cayton V. Riddle, Bowie Independent School District, Jacky Betts, Guy Green, Kent Dosch, Lee Hughes, Keith Richey, Jeff Jackson, Debbie Leonard, Montague County Appraisal District, David Fenoglio, Bret Meekins, Randy West, Trent Myers, James D. Fenoglio, Jim L. Keck, and Melodee Gillespie on October 9, 2024 (ECF No. 20); Winningham's response filed as a Motion to Deny on October 21, 2024 (ECF No. 31); Motion to Dismiss and Brief in Support filed by Debra Spisak on October 10, 2024 (ECF Nos. 22, 23); Winningham's response filed on October 21, 2024 (ECF No. 32); Spisak's reply filed on November 1, 2024 (ECF No. 35); Motion to Dismiss filed by Robin Wood on October 15, 2024 (ECF No. 27); and Winningham's response filed on November 4, 2024 (ECF No. 36).

Also before the Court are the Motion to Dismiss filed by the United States of America, on behalf of Leigha Simonton, Janet Yellen, and Chad Yarbrough on November 14, 2024 (ECF No. 46); Winningham's response filed on December 9, 2024 (ECF No. 55); Motion to Dismiss filed by Jonathan Ellzey on December 9, 2024 (ECF No. 51); Winningham's response filed on December 13, 2024 (ECF No. 60); Motion to Dismiss and Brief in Support filed by Chief Justice Nathan Hecht on December 18, 2024 (ECF Nos. 62, 63); Winningham's response filed as a Motion to Strike and Motion to Deny on December 23, 2024 (ECF No. 71); Motion to Dismiss and Brief in Support filed by Judge McGaughey and Judge Byars on December 19, 2024 (ECF Nos. 65,66); Winningham's response filed as a Motion to Strike and Motion to Deny on December 23, 2024 (ECF No. 72); reply filed by Judges McGaughey and Byars on December 31, 2024 (ECF No. 77); Motion to Dismiss and Brief in Support filed by Glenn Hegar on December 19, 2024 (ECF No. 67); Winningham's response filed as a Motion to Strike and Motion to Deny on December 23, 2024 (ECF No. 73); reply filed by Hegar on December 31, 2024 (ECF No. 77); Motion to Dismiss filed by DPS and McCraw on January 13, 2025 (ECF No. 87); Winningham's response filed on January 21, 2025 (ECF No. 94); reply filed by DPS and McCraw on February 4, 2025 (ECF No. 99); Motion to Dismiss filed by the State Bar of Texas ("SBOT") on January 28, 2025 (ECF No. 97); and Winningham's response filed on February 5, 2025 (ECF No. 100). The remaining defendants have not yet appeared. The Court refers to the defendants who have and have not appeared as "Defendants."

After reviewing the pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **GRANT** the Motions to Dismiss (ECF Nos. 18, 20, 22, 27, 46, 51, 62, 65, 67, 87, 92, 97) and **DISMISS** Plaintiff's claims **without prejudice**.

## I.    FACTUAL BACKGROUND

Winningham initiated this lawsuit as "a collateral attack on a void Judgment made by the (bought and paid for) clerk masquerading as a Judge Patricia Coleman Byars…" ECF No. 1 at 1. Based on the documents filed with the Complaint, the allegedly void Judgment ended a lawsuit to collect Winningham's ad valorem taxes for 2020-22. *See* ECF Nos. 46, 48, 64, 103-06, 118.

According to Winningham's Amended Complaint, "[o]n 27 January 2023 wrongdoers filed a lawsuit" styled 2022-0352M-CV in the 97th District Court of Montague County, Texas ("the tax suit"). ECF No. 11 at 23. The Amended Complaint included a copy of the Judgment that Judge Byars entered on December 28, 2023, which placed a tax lien on Winningham's property and listed the amount of unpaid taxes and other fees due. Other documents showed that the property was posted for a Sherriff's sale (*id*. at. 114-15), but the Montague County Tax Assessor received payment for the 2020-22 taxes. *Id*. at 118. The Amended Complaint also includes correspondence dated June and July 2023 from Debra Spisak, clerk of the Second District of Texas Court of Appeals, detailing Winningham's attempt to request a Writ of Mandamus. ECF Nos. 96-99. Winningham does not allege or include any documents that detail his efforts to appeal the tax suit.

Apparently due to these events, Winningham now sues in this Court anyone remotely connected to the tax suit. Though he states that he seeks to collaterally attack the Judgment in the tax suit, he asserts many additional claims and grievances. He alleges "an extortion racket" to compel him to pay taxes and filing fees in violation of his constitutional rights and a conspiracy to convert his property to that of the United States. ECF No. 11 at 3. He also alleges that Defendants sold "[him] to involuntary servitude." *Id* at 4. Further, he alleges that the "District of Columbia corporate so-called court is busy assaulting [him] with a ZIP Code, so they can justify assaulting [him] with the Commerce Clause with a plenary jurisdiction, where there are no rights." *Id*. at 9.

3

The Amended Complaint also includes allegations that the "WRONGDOERs [were] giving aid and comfort to the enemy in a time of war." *Id*. at 20. Winningham also alleges "during the 2020 election, it came out that the Dominion voting machines were transmitting data to a satellite that was owned by an Italian defense contractor, and leased to the Vatican…" *Id*.

Winningham seeks declaratory relief to void the tax suit judgment, compel other Defendants to act in a way he believes is justified based on the Judgment, and total damages in the amount of $1 billion in silver coin or "as a less desirable alternative, its equivalent in fake money," or "as lien against these thieves." *Id*. at 38-40.

## II.   LEGAL STANDARD

### A.   Rule 12(b)(1) Standard

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). District courts "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). When subject matter jurisdiction is challenged under Federal Rule of Civil Procedure 12(b)(1), the burden is on the plaintiff to establish jurisdiction to survive the motion. *Kokkonen*, 511 U.S. at 377; *Howery*, 243 F.3d at 916 (5th Cir. 2001). A federal court has an independent duty, at any level of the proceedings, to determine whether it properly has subject matter jurisdiction over a case. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level."); *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n.5 (5th Cir. 2005) ("[A] federal court may raise subject matter jurisdiction *sua sponte*."). A court will not assume it has jurisdiction. Rather, "the

basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference." *Getty Oil Corp. v. Ins. Co. of N.A.*, 841 F.2d 1254, 1259 (5th Cir. 1988) (citation omitted). Likewise, "subject-matter jurisdiction cannot be created by waiver or consent." *Howery*, 243 F.3d at 919.

A federal court has subject matter jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States," and civil cases in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and diversity of citizenship exists between the parties. 28 U.S.C. §§ 1331-32 (2024). Absent jurisdiction conferred by statute or the Constitution, the federal district court does not have the power to adjudicate claims and must dismiss an action if subject matter jurisdiction is lacking. *Id.*; *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)). Dismissal for lack of subject matter jurisdiction should be without prejudice because it "is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)).

    **B.**    ***Rooker-Feldman* Doctrine**

Under the *Rooker-Feldman* doctrine, "federal district courts lack jurisdiction to entertain collateral attacks on state court judgments." *Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994); *see generally Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983). The doctrine invokes 28 U.S.C. § 1257 in limiting federal judicial review of state court judgments to the United States Supreme Court by writ of certiorari. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005). The rationale is "federal district court[s], as court[s] of original jurisdiction, lack[ ] appellate jurisdiction to review, modify, or

5

nullify final order[s] of state court[s]." *Liedtke*, 18 F.3d at 317 (alterations in original) (quoting *Kimball v. Fla. Bar*, 632 F.2d 1283, 1284 (5th Cir. 1980)).

*Rooker-Feldman* does not apply, however, until "a party suffer[s] an adverse final judgment rendered by a state's court of last resort." *Gross v. Dannatt*, 736 F. App'x 493, 494 (5th Cir. 2018) (quoting *Ill. Cent. R.R. Co. v. Guy*, 682 F.3d 381, 390 (5th Cir. 2012)). A party proceeding in Texas state court suffers such a judgment if the Texas Supreme Court disposes of that party's petition for review of a state court decision. *Compare id.* at 495 (*Rooker-Feldman* did not apply because petition for review was pending before Texas Supreme Court), *with Batista v. Carter*, No. H-19-113, 2019 WL 1586773, at *3 n.7 (S.D. Tex. Apr. 12, 2019) (citing *Gross*, 736 F. App'x at 494) (*Rooker-Feldman* applied because Texas Supreme Court had denied petition for review), *aff'd*, 796 F. App'x 209 (5th Cir. 2020); *see also* Tex. R. App. P. 53.1 (discussing petitions for review). If applicable, *Rooker-Feldman* prohibits the losing party in state court from suing in federal district court to overturn the state court decision, as federal judicial review then rests solely with the United States Supreme Court. *Exxon Mobil Corp.*, 544 U.S. at 291.

  **C.** ***Younger* Abstention Doctrine**

Federal courts generally must decide cases within their jurisdiction. "[T]he pendency of an action in [a] state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013). However, under the abstention doctrine explained in *Younger v. Harris*, 401 U.S. 37 (1971) and its progeny, courts recognize "certain instances in which the prospect of undue interference with state proceedings counsels against federal relief." *Sprint*, 571 U.S. at 72. *Younger* abstention applies in three "exceptional" circumstances: "state criminal prosecutions, civil enforcement proceedings, and civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability

6

to perform their judicial functions." *Id*. at 73 (internal quotation marks omitted) (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 367-68 (2013)). Federal courts have a duty to ensure abstention under *Younger* would not be proper for the cases before them and may raise the issue sua sponte. *Lawrence v. McCarthy*, 344 F.3d 467, 470 (5th Cir. 2003); *Murphy v. Uncle Ben's, Inc.*, 168 F.3d 734, 737 n.1 (5th Cir. 1999).

### D. Judicial Immunity

Judicial immunity is an absolute immunity from suit, not just from the ultimate assessment of damages. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Allegations of bad faith, malice, or corruption do not overcome judicial immunity. *Id*. Judicial immunity is inapplicable only when: (1) a judge takes an action that is not within his or her official capacity; or (2) as it concerns judicial actions "taken in the complete absence of all jurisdiction." *Id*. Courts must construe jurisdiction broadly for purposes of judicial immunity. *Adams v. McIlhany*, 764 F.2d 294, 299 (5th Cir. 1985) (citing *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978)).

### E. *Pro Se* Standard

Courts must liberally construe the pleadings of parties appearing without counsel, taking all well-pleaded allegations as true. *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993). "[A] *pro se* complaint, however in artfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). But "even a liberally construed *pro se* . . . complaint must set forth facts giving rise to a claim on which relief may be granted." *Levitt v. Univ. of Texas at El Paso*, 847 F.2d 221, 224 (5th Cir. 1988) (citing *Bounds v. Smith*, 430 U.S. 817, 825 (1977)). Thus, a court inquires "whether within the universe of theoretically provable facts there exists a set which can support a cause of action under [the] complaint, indulgently read." *Covington v. Cole*, 528

F.2d 1365, 1370 (5th Cir. 1976). If the court determines that the plaintiff has pleaded his or her best case, a district court does not err in dismissing a *pro se* complaint with prejudice. *Jones v. Greninger*, 188 F.3d 322, 326-27 (5th Cir. 1999) (citing *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986); *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998)). In ruling on a motion to dismiss, courts may consider documents outside the complaint that are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

### III. ANALYSIS

#### A. Winningham does not have standing to bring his collateral attack.

The standing doctrine prevents the Court from having jurisdiction over Winningham's suit. The Court must address the issue of standing before evaluating any argument on the merits or any attack on the sufficiency of Winningham's pleadings. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-60 (1992); *United States v. Rodriguez*, 33 F.4th 807, 811 (5th Cir. 2022) ("Standing is a matter of jurisdiction, and courts must assess their jurisdiction before turning to the merits.").

The Court then first considers whether Winningham has standing to bring the claims he has made against Judge Byars. A plaintiff in federal court must have standing before the court can exercise subject matter jurisdiction. *Arbraugh v. Altimus*, 26 F.4th 298, 303 (5th Cir. 2002) (emphasis added). In ruling on motions to dismiss, the court is free to weigh evidence and satisfy itself that subject matter jurisdiction exists. Fed. R. Civ. P. 12(b)(l). "Article III's case-or-controversy requirement imposes an 'irreducible constitutional minimum of standing.'" *Yarls v. Bunton*, 905 F.3d 905, 909 (5th Cir. 2018) (quoting *Lujan*, 504 U.S. at 560-61 (1992). To satisfy Article III standing, a plaintiff must show: (1) injury in fact; (2) causation; and (3) redressability. U.S. Const. art. 3, § 2, cl. 1; *Bennett v. Spear*, 520 U.S. 154, 167 (1997).

As to showing injury in fact, a plaintiff must "implicate 'an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.'" *Gabriel v. Outlaw*, No. 3:20-cv-60-K-BK, 2002 WL 617628, * 1 (N.D. Tex. Feb. 14, 2022) (quoting *Lujan*, 504 U.S. at 560 (internal quotations and citations omitted)). Next, the causation prong requires the injury to be "fairly traceable to the defendant's allegedly unlawful conduct." *Nat'l Park Hosp. Ass'n v. Dept. of Interior*, 538 U.S. 803 (2003) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). Finally, "redressability requires that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561. Notably, "the party invoking federal subject matter jurisdiction bears the burden of establishing each element [of the standing requirement]." *Id.* (quoting *Ramming*, 281 F.3d at 161). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming*, 281 F.3d at 161 (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).

After reviewing the pleadings, the Court concludes that Winningham has not established standing for any of his claims against Judge Byars because he fails to satisfy the case or controversy requirement. Winningham argues that Defendants engaged in various criminal and civil acts including "operating an extortion racket….selling the Demandant to involuntary servitude…and giving aid and comfort to the enemy in a time of war." ECF No. 11 at 3-7. However, Winningham has not stated facts to show a case or controversy as to Judge Byars. *See Collins v. Garcia*, No. 3:18-cv-3299-N-BH, 2020 WL 4296376, at *4 (N.D. Tex. May 12, 2020), *Bailey v. Willis*, No. 4:17-cv-00276-ALM-CAN, 2018 WL 3321461, at *5 (E.D. Tex. Jan. 11, 2018). If Winningham disagreed with Judge Byars' judgment in the tax suit, his remedy was to appeal the ruling in state court. However, he does not have a remedy in federal court directly

against a state judge for damages or injunctive relief. *See Machetta v. Moren*, 726 F. App'x 219, 219-20 (5th Cir. 2018) ("no case or controversy exists between 'a judge who adjudicates claims under a statute and a litigant who attacks the constitutionality of the statute.'") (quoting *Bauer v. Texas*, 341 F.3d 352, 361 (5th Cir. 2003)).

While his Amended Complaint and other pleadings include a myriad of allegations, Winningham bases those claims on the untenable position that he has standing to sue in federal court to overturn an unfavorable outcome in a state court proceeding. Fifth Circuit precedent is clear that he does not. *See, e.g., Machetta,* 726 F. App'x at 219-20 (5th Cir. 2018) (internal citation omitted). Because he has not asserted facts showing a case or controversy involving Judge Byars, "there is no standing, and without standing, no subject matter jurisdiction." *Machetta*, 726 F. App'x at 220 (citing *Ruiz v. Estelle*, 161 F.3d 814, 829 (5th Cir. 1998)).

Further, Winningham does not have standing to pursue his claims against any other defendant. To the extent that the Amended Complaint centers around the judgment in the tax suit, Winningham fails to present an injury in fact that is fairly traceable to any other defendant. Except for Judge Byars discussed above, none of the other defendants entered the judgment. *See Reule v. Jackson*, 114 F.4th 360, 368 (5th Cir. 2024) (finding a lack of standing to bring claims against court clerks because "the individuals who arguably are responsible for causing Appellants' complained-of injury are the judges who entered the prefiling orders against Appellants"). Judge O'Connor should dismiss Winningham's claims against Defendants without prejudice for lack of standing. *See Ehm v. San Antonio City Council*, 269 F. App'x 375 (5th Cir. 2008) (dismissing without prejudice a pro se plaintiff for lack of standing).

**B.     The Court should abstain from considering Winningham's claims against Defendants.**

Winningham comes to this Court seeking to overturn the tax suit. Under the *Rooker-Feldman* doctrine, the Court lacks jurisdiction over such a collateral attack on a final state court judgment. *Liedtke*, 18 F.3d at 317. "When issues raised in a federal court are 'inextricably intertwined' with a state judgment and the court is 'in essence being called upon to review the state-court decision,' the court lacks subject matter jurisdiction to conduct such a review." *Davis v. Bayless*, 70 F.3d 367, 375 (5th Cir. 1995) (quoting *United States v. Shepherd*, 23 F.3d 923, 924 (5th Cir. 1994)). Plaintiff's recourse in such cases is "with the state appellate courts and thereafter the United States Supreme Court on application for a writ of certiorari, not by a complaint to the federal district court." *Liedtke,* 18 F.3d at 318.

The judgment in the tax suit is final for purposes of *Rooker-Feldman* because it was entered in December 2023, and the deadline for Winningham to appeal to the state court of appeals has long since passed. Tex. R. App. P. 26.1(a); ECF No. 11 at 104-06. "The *Rooker-Feldman* doctrine bars a district court from exercising subject matter jurisdiction in an action it would otherwise be empowered to adjudicate if the federal plaintiff seeks to overturn a state judgment." *Morris v. Am. Home Mortg. Servicing, Inc.*, 443 F. App'x 22, 24 (5th Cir. 2011) (citing *Exxon Mobil Corp.*, 544 U.S. at 291); *see also Liedtke*, 18 F.3d at 317. The doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon*, 544 U.S. at 284. Dismissals under the *Rooker-Feldman* doctrine should be without prejudice since the doctrine deprives the Court of subject matter jurisdiction over the plaintiff's claim. *Wise v. Wilmoth*, No. 3:16-cv-1039-M-BH, 2017 WL 3267924, at *5-6, *17 (N.D. Tex. July 3, 2017), *rec. adopted* 2017 WL 3267727 (N.D. Tex. July 31, 2017). Because Winningham's

11

allegations specifically collaterally attack the judgment in the tax suit and also are "inextricably intertwined" with that judgment, Judge O'Connor should dismiss his claims under the *Rooker-Feldman* doctrine. *Shepherd*, 23 F.3d at 924.

Even if *Rooker-Feldman* did not apply, the Court should abstain from exercising subject matter jurisdiction under the *Younger* doctrine. *See Younger* 401 U.S. 37; *Morse v. Fed. Nat'l Mortg. Ass'n*, No. 4:18-cv-39-ALM-CAN, 2019 WL 1177989, at *5-7 (E.D. Tex. Feb. 12, 2019) (analyzing *Rooker-Feldman* and *Younger* as alternative bases for dismissal for lack of subject matter jurisdiction), *rec. adopted*, 2019 WL 1168530 (E.D. Tex. Mar. 13, 2019). *Younger* requires sua sponte abstention where "(1) the federal proceeding would interfere with an 'ongoing state judicial proceeding'; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has 'an adequate opportunity in the state proceedings to raise constitutional challenges.'" *Bice v. La. Pub. Def. Bd.*, 677 F.3d 712, 716 (5th Cir. 2012) (quoting *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)) (analyzing two of the three elements in a 42 U.S.C. § 1983 case); *Murphy*, 168 F.3d at 737 n.1 (authorizing sua sponte abstention).

Here, the Court should abstain because all three conditions are met. Continuation of this case would interfere with the state court proceedings because the very relief Winningham requests interferes with the tax suit judgment and subsequent efforts to collect on the judgment. ECF No. 11 at 38. Moreover, ad valorem taxes and liens to collect those taxes are important state interests. *See Rowley v. Wilson*, 200 F. App'x 274, 275 (5th Cir. 2006) ("the proceedings implicate important state interests relating to state taxes and liens"). Finally, the tax suit, and the right to appeal an adverse judgment to the applicable state appellate court, afforded Winningham an adequate

opportunity to litigate his claims. *See Middlesex Cty.*, 457 U.S. at 435. As a result, Winningham had an adequate opportunity in state court to appeal the tax suit judgment.

Vacating the tax suit judgment would require the Court to rule on the validity of a state case. *See* ECF No. 11 at 38. Therefore, any constitutional questions regarding the validity of the judgment must be brought in state court as the Court should abstain from ruling under the *Younger* doctrine. On the facts presented, and because Winningham has not shown any reason that abstention would be inappropriate, the Court should abstain from entertaining his claims under *Younger* and dismiss his claims against all defendants. *See Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d 82, 86 (5th Cir. 1992) (stating that "[u]nder *Younger* and its companion cases, a federal district court must abstain from exercising jurisdiction over a suit when state criminal proceedings are currently pending against the federal plaintiff."); *see also Foster v. City of El Paso*, 308 F. App'x 811, 1 (5th Cir. 2009) (dismissal under *Younger* abstention is without prejudice).

### C. Judges Byars and McGaughey and former Chief Justice Hecht are entitled to judicial immunity.

Even if Winningham had standing to bring his claims against Judges Byars and McGaughey or former Chief Justice Hecht, dismissal is proper because they enjoy judicial immunity from civil actions for any judicial act over which their courts have jurisdiction. *Stump*, 435 U.S. at 356 (citing *Bradley v. Fisher*, 80 U.S. 335, 351 (1871)). Judicial immunity is an immunity from suit, not just from the ultimate assessment of damages. *Mireles*, 502 U.S. at 11. Allegations of bad faith, malice, or corruption do not overcome judicial immunity. *Id.* Repeatedly, lower courts have held that judges are absolutely immune from claims for damages arising out of acts performed in the exercise of their judicial functions. *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994); *Ramirez v. Abdal Khallaq*, 4:17-cv-093-Y, 2019 WL 764420, *3 (N.D. Tex. Feb. 21,

2019); *Morgan v. City of Fort Worth, Tex.*, 4:13-cv-004-Y, 2013 WL 3196580, *2 (N.D. Tex. June 25, 2013).

A plaintiff can overcome absolute judicial immunity only if he shows that the complained-of actions were nonjudicial in nature or that the actions were taken in the complete absence of all jurisdiction. *Mireles*, 502 U.S. at 11; *Boyd*, 31 F.3d at 284. Winningham has not alleged such actions here. Judicial immunity applies to civil allegations of conspiracy as Winningham asserted. *See e.g., Holloway v. Walker*, 765 F.2d 517, 522 (5th Cir. 1985) ("It is a well-established rule that where a judge's absolute immunity would protect him from liability for the performance of particular acts, mere allegations that he performed those acts pursuant to a bribe or conspiracy will not be sufficient to avoid the immunity.") (citing *Sparks v. Duval Ranch Co.*, 604 F.2d 976 (5th Cir. 1979)).

Winningham does not show that the actions of Judges Byars and McGaughey and former Chief Justice Hecht were nonjudicial in nature or that they took them absent jurisdiction to do so. Rather, he uses conclusory labels like "non judicial proceedings… and operating in their private capacity" to assume that " even if they had any immunity, [Judges Byars and McGaughey or former Chief Justice Hecht ] waived it." ECF Nos. 71 at 10, 12; 72 at 10, 12. Winningham states that the judges "are fake Judges in their inferior 97th District Court, and Administrators, working for the Executive branch acting as accomplices to these BAR members… to obstruct the Demandant's Challenge to Jurisdiction… in their District of Columbia kangaroo corporate so-called court, and have waived any immunity." ECF No. 11 at 15. Such statements are outlandish and frivolous at best. Though Winningham uses these labels, he does not show that entry of the tax suit judgment or any other action by these judges was nonjudicial or was made without jurisdiction.

Simply claiming that these judges waived judicial immunity does not make it so. Because the complained-of conduct of Judge Byars was judicial in nature and was undertaken pursuant to the jurisdiction of the 97th Judicial District Court of Montague County, Texas, Judge Byars is entitled to absolute judicial immunity. *See Manor v. Tex. Supreme Ct. Justs.*, 76 F. App'x 520, 521 (5th Cir. 2003) ("Because the state judges were entitled to absolute immunity from liability and [the plaintiff] did not allege that they acted in the absence of all jurisdiction, the district court did not err in dismissing [the plaintiff's] complaint in part ….").

### D.  Sovereign immunity bars Winningham's claims against the United States and its agents.

To the extent that Winningham asserts claims against the United States and its agents, sovereign immunity bars those claims. Winningham names Chad Yarbrough and Leigha Simonton as defendants for not arresting and prosecuting the multiple individuals associated with taxing authorities. ECF No. 11 at 18 Further, he names Janet Yellen as a defendant for not "dissolv[ing] and liquidat[ing]" his minor estate, which he presumably believes is being used as authority to subject him to state and local authorities. *Id.* at 17 Though Winningham asserts claims against these defendants in their personal capacity, they are in essence claims against them in their official capacity because he does not seek individual liability. He seeks declaratory relief. *See* ECF No. 11 at 20, 38-40; *see also Goodman v. Harris Cnty.*, 571 F.3d 388 (5th Cir. 2009) ("Personal-capacity suits seek to impose liability upon a government official as an individual while official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.").

"The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress." *Block v. North Dakota*, 461 U.S. 273, 287 (1983). "Sovereign immunity extends to federal agencies and official-capacity claims against federal officials are

15

treated like claims against the United States." *Zhang v. Allen*, No. 3:22-cv-02904-S (BT), 2023 WL 9850877, at *3 (N.D. Tex. Nov. 7, 2023); *see also Goodloe v. United States*, No. 3:22-cv-0005-G (BH), 2023 WL 4712204, at *2 (N.D. Tex. June 21, 2023); *Pinson v. Fed. Bureau of Prisons*, 647 F. App'x 375, *376 (5th Cir. 2016).

In support of his claims that the federal defendants must arrest and prosecute the other defendants for their involvement with his state ad valorem taxes, Winningham cites 28 U.S.C. § 1361 to confer subject matter jurisdiction and to waive sovereign immunity. ECF No. 11 at 3. However, his arguments are unavailing. As the Fifth Circuit has explained, such jurisdiction is conferred only where three elements exist: (1) the plaintiff has a clear right to the relief; (2) the defendant has a clear duty to act; and (3) no other adequate relief must be available. *Wolcott v. Sebelius*, 635 F.3d 757, 768 (5th Cir. 2011)); *see also Heckler v. Ringer*, 466 U.S. 602, 616 (1984).

Here, Winningham does not plead facts to show that the federal defendants are liable to him. He does not identify a non-discretionary action that the United States or its agents were required to undertake. He cites no facts or authority for the proposition that the Federal Bureau of Investigation was required to investigate his claims that state property taxes could not be assessed against him. He cites no facts or authority for the proposition that the United States Attorney's Office is required to prosecute state and local taxing authorities and employees who assess and attempt to collect taxes against individuals who espouse his theories. And he certainly cannot demonstrate that the Treasury Department owed him a clear duty to dissolve a non-existent "minor estate" allegedly created when he was born and split into two separate entities. Winningham states no facts to show that he suffered a legal wrong for which the United States has waived sovereign immunity. Because he does not meet the requirements to proceed under 28 U.S.C. § 1361 or allege

that any other cited statute waives sovereign immunity, his claims against the United States and its agents are barred. *See Freeman v. United States,* 556 F.3d 326, 334 (5th Cir. 2009).

### E. Sovereign immunity bars Winningham's claims against Texas and its agents.

Likewise, under the Eleventh Amendment of the Constitution, the Court should dismiss Winningham's claims against the state of Texas and its agents. A state itself has immunity from private suit —including for money damages, injunctive relief, and declaratory relief— unless the state unequivocally consents to the suit or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate immunity. *Guajardo v. State Bar of Texas*, 803 F. App'x 750, 754 (5th Cir. 2020). Eleventh Amendment immunity extends to state agencies and to state officials if the relief sought would operate against the state. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984).

To the extent that Winningham's claims are against the Texas Department of Public Safety, its former director, McCraw, or other actors on behalf of the state in their official capacity, these are in essence claims against the state. "A suit against a state official in his or her official capacity is not a suit against the official, but rather a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The DPS and other actors for the state assert that they have not waived immunity to the suit. ECF No. 87 at 6. Winningham has not alleged or otherwise shown that the Texas has waived its sovereign immunity as to the claims that he asserted against it. In the absence of such a waiver, the Court lacks subject matter jurisdiction over his claims against DPS and other agents of the state of Texas, and the Court should dismiss the case for lack of subject matter jurisdiction. "Because sovereign immunity deprives the court of jurisdiction, the claims barred by sovereign immunity can be dismissed only under Rule 12(b)(1) and not with prejudice." *Warnock v. Pecos Cty., Tex*., 88 F.3d 341, 343 (5th Cir. 1996).

However, there are three possible exceptions to Eleventh Amendment immunity: (1) for claims seeking injunctive or declaratory relief against a state official under *Ex Parte Young*, 209 U.S. 123 (1908); (2) a state's waiver or consent, *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 267 (1997); and (3) Congress's abrogation of the state's immunity through section five of the Fourteenth Amendment, *Bd. of Trs. of Univ. of Ala. v. Garrett,* 531 U.S. 356, 364 (2001).

The Supreme Court's decision in *Ex Parte Young* allows only the granting of "prospective injunctive relief to prevent a continuing violation of federal law" against state officers in their official capacities and does not allow damages or other retrospective relief. *Green v. Mansour*, 474 U.S. 64, 68 (1985). "Determining if the exception applies involves 'a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Spec's Fam. Partners, Ltd. v. Nettles*, 972 F.3d 671, 680 (5th Cir. 2020) (quoting *Va. Off. for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011) (cleaned up)).

Winningham has not alleged an ongoing harm. He seeks retrospective relief in the form of declaratory relief to void the tax suit judgment. *See* ECF No 11 at 1. The state court disposed of that case, Winningham did not appeal the judgment, and there is no potential for ongoing federal law violations. The Fifth Circuit has refused to extend the reasoning of *Young* to claims for retrospective relief. *See Fontenot v. McCraw*, 777 F.3d 741, 752 (5th Cir. 2015) (quoting *Green v. Mansour*, 474 U.S. at 426). Thus, the exception to Eleventh Amendment immunity under *Ex Parte Young* is unavailable to Winningham.

Furthermore, Winningham has neither pleaded nor directed the Court to authority showing that the United States or Texas has waived its immunity or that Congress has abrogated immunity or consented to suit for his claims.

Additionally, Winningham does not allege enough facts to state a claim against other individual defendants acting on behalf of the state. He cannot sue them for actions that they took in their individual capacity. *See Goodman*, 571 F.3d 388. Nor can he sue them for actions that they took in their official capacity because he cannot bring the same suit against the state and its agents. *See Appleberry v. Fort Worth Indep. Sch. Dist.*, No. 4:12-cv-00235-A, 2012 WL 5076039, *4 (N.D. Tex. Oct. 17, 2012). Otherwise, Winningham could recover twice for the same claims by suing the state's agents and the state—a form of double-dipping that the law does not allow. *Id.*

Sovereign immunity is a jurisdictional bar. *See Carver v. Atwood*, 18 F.4th 494, 497 (5th Cir. 2021). Because the Court lacks subject matter jurisdiction over Winningham's claims against the state of Texas and its agents, the undersigned does not address the substantive points of the State's Motion under Rule 12(b)(6). *See Ramming*, 281 F.3d at 161.

### F. The Court should dismiss Winningham's case without leave to amend.

Winningham has filed voluminous complaints and responses to the many Motions to Dismiss the defendants filed without properly invoking the Court's subject matter jurisdiction. Accordingly, the Court concludes that he has pleaded his best, though legally unsupportable, case against Defendants. Any further amendment to properly plead facts to show that the Court has subject matter jurisdiction would be futile and would only cause unnecessary delay. *Jones,* 188 F.3d at 326-27.

## IV. CONCLUSION

Because the Court lacks subject matter jurisdiction over Plaintiff's claims, the undersigned **RECOMMENDS** that Judge O'Connor **GRANT** the Motions to Dismiss (ECF Nos. 18, 20, 22, 27, 46, 51, 62, 65, 67, 87, 92, 97) and **DISMISS** Plaintiffs' claims **without prejudice**.

A copy of these findings, conclusions, and recommendation shall be served on all parties

in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), modified by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

**SIGNED** on February 6, 2025.

                                                                  Hal R. Ray, Jr.
                                                                  UNITED STATES MAGISTRATE JUDGE